Michael A. SULLIVAN, Respondent,

v.

CITY OF MINNEAPOLIS, Appellant.

No. C2–97–641.

Court of Appeals of Minnesota.

Oct. 21, 1997.

Jay M. Heffern, City Attorney, William C. Dunning, Asst. City Attorney, Minneapolis, for appellant.

Martin T. Montilino, Borkon, Ramstead, Mariani & Letourneau, Ltd., Minneapolis, for respondent.

Considered and decided by HUSPENI, P.J., and AMUNDSON and FOLEY, JJ.*

## OPINION

HUSPENI, Judge.

Respondent police officer sued appellant city, his employer, claiming that he was entitled to uninsured motorist coverage under the city's self-insured policy. In response to the parties' cross-motions for summary judgment on the coverage issue, the district court ruled that respondent was entitled to coverage. Appellant challenges the summary judgment, arguing that there is no statutory basis for extending coverage to respondent.[1]

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Because we hold that respondent was not entitled to coverage under appellant's uninsured motorist policy, we reverse.

## FACTS

The parties have stipulated to the facts. Respondent Michael Sullivan, a police officer for appellant City of Minneapolis, and Officer Paul Cottingham, driving separate squad cars, were involved in an automobile chase of a suspect. When the suspect's vehicle was rammed and rendered inoperable, he left it and fled on foot. Respondent left his squad car and pursued the suspect on foot, running along the side of the street. Officer Cottingham's squad car, travelling in the same direction as respondent, hit him from behind and broke his ankle. Respondent received workers' compensation for his injury. The suspect was an uninsured motorist.

## ISSUES

1. Is respondent entitled to uninsured motorist coverage under Minn.Stat. § 65B.605?

2. Must the vehicle involved in the accident that injures the victim be uninsured for the victim to recover under an uninsured motorist policy?

3. Is respondent entitled to uninsured motorist coverage under Minn.Stat. § 65B.49, subd. 3a(5)?

## ANALYSIS

### Standard of Review

"Insurance coverage issues are questions of law for the court." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn. 1992). Similarly, the construction of a statute is a question of law fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). Therefore, we review these issues de novo.

1. This court dismissed the first appeal because damages had not been determined. Following entry of judgment for respondent in the amount of $18,946.86, this second appeal was filed.

### 1. Recovery Under Minn.Stat. § 65B.605

■ Minn.Stat. § 65B.605 (1996), part of the No–Fault Act, provides that:

**Subdivision 1. Flee; definition.** For purposes of this section, the term "flee" means to increase speed, extinguish motor vehicle headlights or taillights, or to use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle.

\* \* \* \*

**Subd. 3. Liability for loss.** If a peace officer is acting in the lawful discharge of an official duty, a person fleeing the peace officer by means of a motor vehicle or motorcycle is liable for all bodily injury and property damage suffered by any other person, except another person fleeing from a peace officer, arising out of the operation or use of a pursuing peace officer's vehicle, unless the peace officer is not exercising reasonable care.

The trial court stated that the sole issue presented in this case was whether the section 65B.605 requirements were met. In concluding that they were, the court observed that "[respondent] was injured while in the process of pursuing a suspect, such pursuit having been initiated by suspect's use of a motor vehicle, and which pursuit was still ongoing at the time [respondent] was injured." Appellant argues that the requirements of section 65B.605 cannot be met here because at the time of the accident the suspect was not "fleeing the peace officer by means of a motor vehicle" as "flee" is defined in Minn.Stat. § 65B.605, subd. 1.

■ We find appellant's argument persuasive.[2] Construing the statute to apply to one in the position of the suspect here, who was fleeing the police on foot and whose vehicle had been rammed, disabled, and abandoned, would be inconsistent with the purpose of the No–Fault Act[3] and would, we believe, expand inappropriately those risks that the motoring public may reasonably be asked to bear.

> No-Fault benefits are to be limited to "those risks the policy was intended to insure against, that is, against risks associated with 'motoring.' "

*Christensen v. General Acc. Ins.*, 482 N.W.2d 510, 513 (Minn.App.1992) (quoting *Classified Ins. Corp. v. Vodinelich*, 368 N.W.2d 921, 923 (Minn.1985)), *review denied* (Minn. May 15, 1992).

Respondent is not entitled to recover under Minn.Stat. § 65B.605.

### 2. The Uninsured Vehicle

■ The district court observed that:

In order for a party to recover uninsured motorist benefits, the party seeking recovery must show that his injuries resulted from the maintenance or use of a motor vehicle.

Respondent also argues that he is eligible for uninsured motorist benefits because his injury arose out of the maintenance or use of a motor vehicle. We disagree.

■ It is true that the No–Fault statutes apply to "injuries arising out of the maintenance or use of a motor vehicle." *See, e.g.*, Minn.Stat. § 65B.43, subd. 3; Minn.Stat. § 65B.44, subd. 1; Minn.Stat. § 65B.49, subd. 1. However,

> courts have recognized a distinction between first-party coverage, which follows the person, and uninsured and underinsured coverages, which are now tied " 'to the particular vehicle involved in the accident.' "

*LaFave v. State Farm Mut. Auto. Ins. Co.*, 510 N.W.2d 16, 19 (quoting *Thommen v. Illinois Farmers Ins. Co.*, 437 N.W.2d 651,

---

**2.** The district court's reliance on an unpublished decision, *Richter v. State*, C1–93–931 (Minn.App. Nov. 8, 1993) (applying Minn.Stat. § 65B.605), was misplaced, first because unpublished decisions of this court have no precedential value, Minn.Stat. § 480A.08, subd. 3 (1996), and second, because in *Richter* the direct cause of the officer's injuries was the uninsured vehicle, not another officer's squad car.

**3.** Minn.Stat. § 65B.605 is part of the No–Fault Automobile Insurance Act. *See* Minn.Stat. § 65B.41 (1996): "Sections 65B.41 to 65B.71 may be cited as the 'Minnesota no-fault automobile insurance act'."

653 (Minn.1989)). "The particular vehicle involved" in respondent's accident was Officer Cottingham's squad car. That vehicle, however, was not uninsured. The suspect's vehicle, which was uninsured, was not "the particular vehicle involved in the accident." The uninsured status of the suspect's vehicle cannot be transferred to Officer Cottingham's vehicle in an attempt to confer uninsured motorist benefits on respondent.[4]

Because respondent's claim is for uninsured motorist benefits under appellant's policy, the focus in addressing whether respondent's injury arose out of the maintenance or use of an automobile must remain on the suspect's uninsured vehicle. That vehicle does not meet any of three factors set out in *Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn.1987):

> [T]he vehicle must be an "active accessory" in causing the injury. * * * [No] act of independent significance occurred, breaking the causal link between "use" of the vehicle and the injuries inflicted. * * * [C]overage should exist only for injuries resulting from use of an automobile for transportation purposes.

The suspect's uninsured vehicle was not an "active accessory" in causing respondent's injury. Respondent was never in or near that vehicle. When the injury occurred, the suspect had left that vehicle to flee on foot. The involvement of the uninsured suspect and his vehicle was completely incidental to respondent's injury. An officer on foot can be injured by an officer in a squad car whether the two are pursuing an insured suspect, an uninsured suspect, or no suspect at all.

Even if we were to strain to recognize some causative link between the suspect's vehicle and respondent's injury, the second *Klug* factor cannot be met. A number of independent acts broke any causative link. The suspect's vehicle was rammed and disabled. The suspect left his vehicle and fled on foot. Respondent also left his vehicle and

pursued the suspect on foot. Another officer pursued the suspect in a squad car. The other officer's car injured respondent.

Finally, the third *Klug* factor cannot be met. Respondent's injuries did not occur while the suspect's vehicle was being used for transportation purposes. That vehicle was not being used, nor was it even useable, at the time of the injury.

Because respondent's injury did not arise out of the use of an uninsured vehicle, he cannot recover uninsured motorist benefits.

### 3. Recovery Under Minn.Stat. § 65B.49, subd. 3a(5)

Appellant argues to this court, as it argued to the district court, that respondent is not entitled to coverage because at the time of the accident respondent was not an insured under appellant's policy. Although neither respondent nor the district court addressed this issue, we address it in the interest of completeness.

Minn.Stat. § 65B.49, subd. 3a(5), provides in relevant part:

> If at the time of the accident the injured person is not occupying a motor vehicle or motorcycle, the injured person is entitled to select any one limit of liability for any one vehicle afforded by a policy under which the injured person is insured.

Respondent was not occupying a vehicle at the time of the accident. Therefore, he is entitled to select the limit of liability for any one vehicle afforded by a policy under which he is an insured. Appellant argues that respondent was not an insured under its policy because its auto insurance covers city employees only while they are occupying city-owned vehicles.[5] Although respondent had recently left one city-owned vehicle and was injured by another city-owned vehicle, he was not occupying a city-owned vehicle at the time the accident occurred. *See Allied Mut. Ins. Co. v. Western Nat'l Mut. Ins. Co.*, 552

---

4. In addition, uninsured motorist coverage, which is a substitute for the absent liability coverage a tortfeasor should or could have had, cannot be more extensive than that absent liability coverage itself. *McIntosh v. State Farm*, 488 N.W.2d 476 (1992).

5. Admittedly, appellant cites to no evidence in the record that its policy covered city employees only while they occupied city-owned vehicles. However, that assertion is undisputed.

N.W.2d 561, 563 (Minn.1996) (adopting the ordinary and accepted meaning of "occupy" and rejecting definitions "far removed from common usage"); *Gieser v. Home Indem. Co.*, 484 N.W.2d 256, 258 (Minn.App.1992) (officer who was struck by an uninsured vehicle after he had left his squad car to direct traffic held not to be "occupying a covered auto" and denied uninsured motorist benefits).

It is indisputable that respondent was not occupying any vehicle at the time of the accident. Therefore, appellant's policy was not "a policy under which the injured person [was] insured," and respondent cannot claim coverage pursuant to Minn.Stat. § 65B.49, subd. 3a(5) as a person insured under that policy.

## DECISION

Respondent is not entitled to recover under the uninsured motorist provision of appellant's policy because, at the time of the injury, the suspect was not fleeing by means of a motor vehicle. Respondent is also precluded from recovering uninsured motorist benefits because the vehicle involved in his accident was not uninsured, and respondent lacks status as an insured under appellant's policy because he was not occupying a city-owned vehicle when the accident occurred.

**Reversed.**