# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3223

_____

| | | |
|---|---|---|
| The Minch Family LLLP, a North Dakota Limited Liability, Limited Partnership; Lois A. Minch, as Personal Representative of the A. R. Minch Estate; Lois A. Minch, individually; Roger J. Minch, as Trustee of the Heirs and Next of Kin of A. R. Minch, Deceased, | * * * * * * * * | |
| Appellants, | * | |
| v. | * * * | Appeal from the United States District Court for the District of Minnesota. |
| Buffalo–Red River Watershed District; Roger Ellefson; Curtis Nelson; Gerald L. VanAmburg; John E. Hanson; E. Robert Olson, in both their Personal Capacities as Individuals and as Officers and Managers of Co-Defendant Buffalo–Red River Watershed District, | * * * * * * * * * | |
| Appellees. | * | |

_____

Submitted: June 15, 2010
Filed: December 15, 2010

_____

Before RILEY, Chief Judge, CLEVENGER[1] and COLLOTON, Circuit Judges.

_____

RILEY, Chief Judge.

During contentious litigation in Minnesota state court, a judge entered an order authorizing the Buffalo–Red River Watershed District (BRRWD) to "clean out" or remove accumulated silt and topsoil from a ditch running next to a road along the length of one of A. R. Minch's fields. The Minch Family LLLP, Lois A. Minch and trustee Roger J. Minch[2] (collectively, Minch) later sued BRRWD, Roger Ellefson, Curtis Nelson, Gerald L. VanAmburg, John E. Hanson, and E. Robert Olson (collectively, appellees) in federal court under 28 U.S.C. § 1332, contending BRRWD exceeded the scope of the clean-out order by entering upon Minch's property. Minch alleged causes of action for trespass, nuisance, and the wrongful death of A. R. Minch. The district court[3] granted appellees' motion for judgment on the pleadings' finding Minch's claims were (1) barred by the Rooker-Feldman doctrine, (2) res judicata, and (3) insufficient to state causes of action as pled. We affirm.

## I.    BACKGROUND

In the 1970s, A. R. Minch bought approximately 560 acres of land in Kragnes Township, Clay County, Minnesota. See Minch Family Ltd. P'ship v. Buffalo-Red River Watershed Dist., 2007 WL 93084, at *1 (Minn. Ct. App. 2007) (unpublished). A. R. Minch later transferred the land to the Minch Family Limited Partnership. Id.

_____

[1]The Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal Circuit, sitting by designation.

[2]Where Roger J. Minch is acting in his capacity as trustee of the heirs and next of kin of A. R. Minch, deceased, we refer to him as "trustee Roger Minch." When acting in his capacity as attorney, we will refer to him as "attorney Roger Minch."

[3]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

Minch's land is divided between sections 28 and 34 of Kragnes Township. County State Aid Highway 5 borders the north side of Minch's section 34 property. See Minch v. Buffalo-Red River Watershed Dist., 723 N.W.2d 483, 485 (Minn. Ct. App. 2006). Adjacent to the highway on Minch's land lies the section 34 ditch, which "is a private ditch in which [BRRWD] has a public right-of-way easement." Id.

Flooding and drainage on Minch's land has been the focus of a significant amount of litigation in the Minnesota state courts. Relevant to this appeal, on November 22, 2004, BRRWD ordered Minch to clean the section 34 ditch. Id. at 486. Minch refused and sued BRRWD in Minnesota state court, arguing BRRWD lacked the authority to order him to clean the ditch. Id. On September 23, 2005, the Minnesota court granted BRRWD's motion for summary judgment and ordered Minch to clean the ditch, later dismissing the action. Id. Minch did not clean the ditch. BRRWD moved "to [c]ompel [Minch] to comply with the September Order, and/or for an Order holding [Minch] in contempt for failing to comply with said Order." While the motion was pending, Minch appealed the September 23, 2005 order to the Minnesota Court of Appeals.

Finding Minch's argument that BRRWD lacked the authority to order Minch to clean the ditch "is based upon a good-faith argument regarding an unsettled area of the law," on December 1, 2005, the Minnesota court declined to hold Minch in contempt for not cleaning the ditch, and declined to compel Minch to clean the ditch. However, the court did order:

1.      [BRRWD] is hereby authorized to clean out the existing ditch referenced in the September 23, 2005 Order of this Court. Said clean-out operations may commence forthwith subject to the following rules and exceptions:

   a.      Said clean-out operation is limited to the existing ditch referenced in the Court's September 23, 2005 Order;

-3-

> c.  Said clean-out operation may not be performed so as to interrupt [Minch's] ability to farm his land in the Spring, Summer or Fall of 2006; [and]
>
> d.  Said clean-out operations shall not laterally enlarge or increase the depth of the existing ditch from how it existed prior to [Minch] allowing said ditch to fill with soil, mud or silt.

The Minnesota court also ordered Minch to reimburse BRRWD "for all reasonable and necessary costs related to [the] ditch cleaning."

The scope of the Minnesota court's clean-out authorization is the focus of this lawsuit. BRRWD conducted the clean-out on December 13, 2005. At the motion hearing, the district court recited non-controversial facts, saying, "In the process, agents of [BRRWD] entered upon the land of Mr. Minch to access the ditch. Certain of their equipment was parked on Minch's land overnight and left behind the spoils, the scrap, scraped-out topsoil."

The Minnesota Court of Appeals ultimately agreed with Minch that, under Minnesota law, BRRWD lacked the authority to order Minch to clean and maintain the ditch. Minch, 723 N.W.2d at 488. The court also held Minn. Stat. § 103E "explicitly authorizes the [BRRWD] to clean the silation present in the Section 34 ditch." Id. at 489. And when a watershed district determines an obstruction exists, see Minn. Stat. § 103E.075, and a landowner refuses to remove the obstruction, BRRWD "can file a lien against the property for the cost of removing the obstruction." Id. at 489. The court therefore remanded for a determination whether the silation constituted an obstruction within the meaning of § 103E.075. Id. at 492-93.

A. R. Minch died of lung cancer on February 24, 2006. On February 20, 2009, Minch brought this action in the district court, alleging causes of action for (1) trespass by exceeding the scope of the Minnesota court's clean-out order, (2) nuisance flowing from the trespass, and (3) a claim for the wrongful death of A. R. Minch. Appellees answered and moved for judgment on the pleadings. Ruling from the bench, the district court granted appellees' motion and dismissed Minch's complaint, citing res judicata and collateral estoppel, the Rooker-Feldman doctrine, and insufficiency of the pleadings. Minch appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Standard of Review

"We review a district court's grant of judgment on the pleadings de novo." Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008) (citing Williams v. Bradshaw, 459 F.3d 846, 848 (8th Cir. 2006)). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002) (citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). We view the nonmoving party's facts as true and grant all reasonable inferences in that party's favor. Poehl, 528 F.3d at 1096. We also review de novo the jurisdictional question of whether the Rooker-Feldman doctrine deprives the federal courts of subject matter jurisdiction. See Riehm v. Engelking, 538 F.3d 952, 964 (8th Cir. 2008) (citing Simes v. Huckabee, 354 F.3d 823, 827 (8th Cir. 2004)).

**B.     Rooker-Feldman Doctrine**

The district court applied the Rooker-Feldman doctrine, see D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), as one ground for its grant of judgment on the pleadings to BRRWD.  The district court held "to the extent that the plaintiffs' claims arise out of actions either authorized or permitted by the December 1, 2005, state court order, they are barred by the Rooker-Feldman Doctrine" because in order "[t]o find the defendants unlawfully entered Minch's land, [the district court] would have to effectively reverse the state court's order which authorized that specific entry in order to clean out the ditch."

Rooker-Feldman does not apply here.  The Supreme Court refers to the doctrine as "narrow," see Lance v. Dennis, 546 U.S. 459, 464 (2006), applying in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  Minch complains of injuries caused by BRRWD, not the state court judgment.  In Riehm, we explained,

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.

Riehm, 538 F.3d at 965 (quoting Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003)).  The Riehms were "not challenging the state court's issuance of the [underlying] order," but rather acts undertaken by the defendants "in seeking and executing" the order.  Id.  Similarly, Minch does not seek rejection of the state court's order, but rather complains appellees' acts exceeded the order's scope.  Minch's claims call for interpretation, not

rejection, of the state court's order. Therefore, as in <u>Riehm</u>, "the <u>Rooker</u>-<u>Feldman</u> doctrine does not apply." <u>Id.</u>

### C.  Preclusion

The district court, referencing <u>Hauschildt v. Beckingham</u>, 686 N.W.2d 829, 837 (Minn. 2004), found "that all issues and claims presented in [the] complaint either were or could have been litigated in the extensive state proceedings below. Accordingly, they are barred by the doctrines of res judicata and collateral estoppel." "Res judicata and collateral estoppel are related doctrines. Fundamental to both doctrines 'is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.'" <u>Id.</u> (quoting <u>Kaiser v. N. States Power Co.</u>, 353 N.W.2d 899, 902 (Minn. 1984)).[4]

### 1.  Collateral Estoppel

Minnesota courts treat collateral estoppel as a mixed question of law and fact subject to de novo review. <u>See</u> <u>Hauschildt</u>, 686 N.W.2d at 837. Collateral estoppel applies to preclude relitigation of an issue in a subsequent lawsuit where the following elements are met:

> (1) the issue must be identical to one in a prior adjudication;
> (2) there was a final judgment on the merits;
> (3) the estopped party was a party or was in privity with a party to the prior adjudication; and
> (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

---

[4]In conformity with the full faith and credit statute, 28 U.S.C. § 1738, we apply Minnesota preclusion law. <u>See</u> <u>Knutson v. City of Fargo</u>, 600 F.3d 992, 996 (8th Cir. 2010) (citing <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380-81 (1985)).

Id.  Although elements (2)-(4), above, are met in this case, the issue here is not identical to the issue in the prior adjudication.  The issue before the state court was whether BRRWD had the authority to order Minch to clean the ditch.  The issue in this case is whether in cleaning the ditch BRRWD exceeded the scope of the state court's order authorizing BRRWD to conduct the clean-out.  Collateral estoppel does not apply here.

## 2.   Res Judicata

In Minnesota, whether res judicata applies to preclude a claim is a question of law subject to de novo review.  See id. at 840 (citing Care Inst., Inc.-Roseville v. Cnty. of Ramsey (CIIR), 612 N.W.2d 443, 446 (Minn. 2000)).

> Res judicata applies as an absolute bar to a subsequent claim when
> (1) the earlier claim involved the same set of factual circumstances;
> (2) the earlier claim involved the same parties or their privies;
> (3) there was a final judgment on the merits; [and]
> (4) the estopped party had a full and fair opportunity to litigate the matter.

Id. (citing State v. Joseph, 636 N.W.2d 322, 327 (Minn. 2001)).  BRRWD again cannot meet the first element.  BRRWD attempts to paint the factual circumstances in the state court action broadly, describing this suit as "an effort to recover for trespass based on BRRWD's ditch cleaning pursuant to [the state court's] December 2005 order."  Although the state court lawsuit may be thought of broadly as the "ditch cleaning case," res judicata requires more than this.

"Central to considering [the first element] is what is meant by 'claim' or 'cause of action.'  A claim or cause of action is 'a group of operative facts giving rise to one or more bases for suing.'"  Id. (quoting Martin ex rel. Hoff v. City of Rochester, 642 N.W.2d 1, 9 (Minn. 2002)).  "[T]he focus of res judicata is whether the second claim 'arise[s] out of the same set of *factual circumstances*.'"  Id. (quoting Hauser v. Mealey, 263 N.W.2d 803, 807 (Minn. 1978)) (emphasis in original).  "The common test for

determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions." McMenomy v. Ryden, 148 N.W.2d 804, 807 (Minn. 1967). Critically, "claims cannot be considered the same cause of action if 'the right to assert the second claim did not arise at the same time as the right to assert the first claim.'" Hauschildt, 686 N.W.2d at 841 (quoting CIIR, 612 N.W.2d at 447).

Because Minch's alleged trespass, nuisance, and wrongful death claims arose during the course of the state court action, there can be no question the actions arose at different times. It was error for the district court to grant judgment to BRRWD on either preclusion ground.

### D. Sufficiency of the Pleadings
#### 1. Trespass

In Minnesota, the elements of trespass are "a rightful possession in the plaintiff and unlawful entry upon such possession by the defendant." Wendinger v. Forst Farms, Inc., 662 N.W.2d 546, 550 (Minn. Ct. App. 2003). It is undisputed Minch was in rightful possession of his land and BRRWD entered upon Minch's land. The only question is whether the pleadings, and matters fairly embraced thereby, allege the entry to be unlawful. The district court held the entry Minch pled was not wrongful or unlawful because the state "court order explicitly authorized [BRRWD] to clean out the ditch, part of which was located on Minch's land, at least one-half was on that property."

Minch argues the district court erred in dismissing the trespass claim because, although the state court order allowed BRRWD to clean the ditch, "there remains, at minimum, a fact issue as to whether the court order authorized BRRWD to enter Minch's land." We disagree. "Interpretation of court orders presents questions of law" and "[a]s a general rule, when the language is unambiguous, it shall be construed according to its plain meaning." Boynton v. Nill, Nos. A08-0244, A08-0554, 2009

WL 670459, at *3 (Minn. Ct. App. March 17, 2009) (unpublished) (citing Anderson v. Archer, 510 N.W.2d 1, 3 (Minn. Ct. App. 1993) and Starr v. Starr, 251 N.W.2d 341, 342 (Minn. 1997)).  Minch attached the Minnesota district court's order to his complaint, and we therefore consider the order a part of Minch's complaint.  See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Upon review of the state court's order, we agree with the district court that "[c]learly some entry onto Minch's land was authorized."  In broad terms, the state court authorized BRRWD to clean the ditch.  The court set forth several limitations on BRRWD's authority to do the cleaning.  Among these, the "clean-out operation [was] limited to the existing ditch referenced in" the court's prior order, was not to be performed so as to interrupt farming the next year, and was not to enlarge the ditch from its historic size.  We think the plain meaning and clear import of the state court's order was to allow BRRWD access to not only the ditch, but also to the surrounding area necessary to conduct the clean-out.  The order broadly authorized BRRWD to clean the ditch, subject to limitations, and as the district court noted, "staying off Minch's land was not amongst them."

Minch insists the state court's order that the "clean-out operation" be "limited to the existing ditch" means the entire operation must take place from within the confines of the ditch.  This interpretation is contradicted by the clean-out order itself, which contemplated possible interference with Minch's ability to farm his land.  If Minch's interpretation of the order were correct, there would be no need for this provision, because none of the operation would take place on Minch's farmland.  Cf. BancInsure, Inc. v. Marshall Bank, N.A., 453 F.3d 1073, 1076 (8th Cir. 2006) ("A contract is to be read as harmonious, such that each of its terms are given effect consistent with one another.") (citing Telex Corp. v. Data Prods. Corp., 135 N.W.2d 681, 685 (Minn. 1965)).  We again agree with the district court, which held "[r]ead in context the term 'clean-out operation,' undefined, plainly refers to the work performed,

not the people or parties or equipment performing it." The district court correctly dismissed Minch's trespass claim.

### 2. Remaining Claims

Minch cannot maintain a nuisance claim because he fails to allege an interference with his use or enjoyment of his land. Minch argues the nuisance arose when BRRWD "drove heavy equipment upon the Plaintiffs' land, created a narrow and dangerous ditch, and piled dirt upon the Plaintiffs' land." "[A]lthough some of the traditional distinctions between nuisance and trespass have become blurred and uncertain, the distinction now accepted is that trespass is an invasion of the plaintiff's right to exercise exclusive possession of the land and nuisance is an interference with the plaintiff's use and enjoyment of the land." Wendinger, 662 N.W.2d at 550 (quoting Fagerlie v. City of Willmar, 435 N.W.2d 641, 644 n.2 (Minn. Ct. App. 1989)). Minch complains here of acts affecting his exclusive possession of his land, not his use and enjoyment of the land. Minch's claim for nuisance must be dismissed.

As to wrongful death, in Minnesota the elements of a claim are duty, breach, and proximate causation, resulting in death. See Laska v. Anoka Cnty., 696 N.W.2d 133, 137 (Minn. Ct. App. 2005). Acting lawfully, BRRWD did not breach any duty of care it owed to Minch.

### E. Immunity

The appellees argue, regardless of the outcome of the above issues, they were all immune from suit. The district court did not address this issue in its opinion, and because we conclude Minch's claims were all properly dismissed on other grounds, neither do we.

## III. CONCLUSION
We affirm the district court's judgment.

_____

-11-